IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FREDRICK E. MCSWINE, | **8:22CV30** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| SCOTT FRANKS, GOVERNOR PETE RICKETS, and HARBANS DEOL, | |
| Defendants. | |

Plaintiff, a state prisoner who appears pro se, filed this action against the Nebraska Department of Correctional Services ("NDCS") on January 24, 2022. The court conducted an initial review of Plaintiff's Complaint (Filing 1) and, in a Memorandum and Order entered on January 28, 2022 (Filing 4), determined it fails to state a claim upon which relief may be granted and thus is subject to preservice dismissal under 28 U.S.C. § 1915A. On the court's own motion, however, Plaintiff was granted leave to amend. An Amended Complaint (Filing 7), which supersedes the prior pleading, was timely filed on March 24, 2022.

## I.  LEGAL STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough

factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff complains he needs new eyeglasses. Plaintiff's last prescription was in February 2018, when he was seen at the Tecumseh State Correctional Institute ("TSCI") eye clinic. Prisoners could be seen at the TSCI clinic every 2 years, but because of overcrowding the waiting period was extended. When Plaintiff's next appointment came up in February or March 2021, he was in restrictive housing and was not taken to the appointment because of staffing shortages at the prison. Several passes were issued, but Plaintiff was never escorted to the clinic. Plaintiff was later transferred to the Lincoln Correctional Center ("LCC"), where he was put at the bottom of the waiting list for an eye exam. Plaintiff filed grievances at LCC, but was told he needs to wait his turn. (See Filing 7, ¶¶ 13-24.)

Defendants named in the Amended Complaint are the NDCS Director Scott Franks [*sic*],[1] NDCS Medical Director Harbans Deol, and Nebraska Governor Pete Rickets [*sic*].[2] All Defendants are sued in their individual and official capacities.

---

[1] The Director's last name is spelled Frakes.

[2] The Governor's last name is spelled Ricketts.

(See Filing 7, ¶¶ 8-11.) Plaintiff requests only declaratory and injunctive relief. (See Filing 7, ¶ 37.) Plaintiff states this action is brought under 42 U.S.C. § 1983,[3] the Americans with Disabilities Act ("ADA"),[4] and the Rehabilitation Act ("RA").[5] (See Filing 7, ¶ 2.)

## III.  DISCUSSION

Plaintiff's original Complaint was dated September 26, 2021, but was not received by the court for filing until January 24, 2022. Plaintiff alleged in the Complaint that he was incarcerated at LCC. However, in a letter dated February 5, 2022 (Filing 5), requesting an extension of time to plead in response to the court's order on initial review of the Complaint, Plaintiff stated he was back in the restrictive housing unit at TSCI after testing positive for Covid. Plaintiff also alleges in the Amended Complaint, which he signed on February 15, 2022, that he is incarcerated at TSCI (Filing 7, ¶ 1). However, in his cover letter to the court, dated February 14, 2022, Plaintiff advises that "my address has changed I have returned to Lincoln Correctional Center" (Filing 7, p. 12). According to the NDCS website,[6] Plaintiff is now in custody at the Reception and Treatment Center ("RTC"), which is the new

---

[3] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, …." 42 U.S.C.A. § 1983 (Westlaw 2022).

[4] Title II of the ADA provides: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …." 29 U.S.C.A. § 794(a) (Westlaw 2022).

[5] Section 504 of the RA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (Westlaw 2022).

[6] https://dcs-inmatesearch.ne.gov/Corrections/COR_input.html.

3

name for LCC combined with the adjacent Diagnostic and Evaluation Center ("DEC"). For purposes of initial review, therefore, the court will assume Plaintiff is at RTC and is still on the waiting list for an eye exam at that facility.

## A. ADA/Rehabilitation Act

"Improper medical treatment claims may not be brought under the ADA or RA." *A.H. v. St. Louis Cty.*, 891 F.3d 721, 729-30 (8th Cir. 2018) (affirming district court's dismissal of ADA/RA claim for failure to prevent jail suicide); *see Shelton v. Ark. Dep't of Human Servs.*, 677 F.3d 837, 843 (8th Cir. 2012) ("The district court correctly held that a claim based upon improper medical treatment decision may not be brought pursuant to either the ADA or the Rehabilitation Act."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions, ...."). Plaintiff's claim for lack of eyecare clearly falls within category, and cannot be brought under the ADA or RA in this circuit.[7]

## B. Section 1983 (Civil Rights Act of 1964)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

"It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). "A medical need is objectively serious

---

[7] A district court in the Ninth Circuit has held that the ADA does not require prisoners to be provided with eyeglasses. *Low v. McGinness*, No. 2:10-CV-2398 LKK JFM, 2012 WL 1131534, at *1-2 (E.D. Cal. Mar. 30, 2012); *see* 28 CFR § 35.135 ("This part [28 C.F.R. Part 35] does not require a public entity to provide to individuals with disabilities ... individually prescribed devices, such as prescription eyeglasses or hearing aids; ...."). *But cf. Bergen v. Wisconsin*, No. 20-CV-813-JPS, 2022 WL 124299, at *4 (E.D. Wis. Jan. 13, 2022) (prisoner's ADA claim for failure to provide eyeglasses permitted to proceed to service of process).

if it is supported by medical evidence, such as a physician's diagnosis, or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016) (quoting *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009)). Deliberate indifference requires a showing that the defendant "had actual knowledge of that need but deliberately disregarded it." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Bailey*, 810 F.3d, at 594).

In an unpublished 1994 decision, the Court of Appeals affirmed the dismissal of an Eighth Amendment claim where although there was a delay in supplying an inmate eyeglasses, "he did not prove the delay created an acute or escalating situation." *Muhammad v. King*, 21 F.3d 432 (Table) (8th Cir. 1994). In the present case, Plaintiff alleges he has complained of headaches, migraines, blurred vision and, on some days, lack of vision because he cannot obtain the proper prescription. (Filing 7, ¶ 23.) For purposes of initial review, the court finds Plaintiff has sufficiently alleged that he suffers from an objectively serious medical need. *See, e.g., Miller v. Davidson*, No. 4:21CV3092, 2021 WL 4132420, at *9 (D. Neb. Sept. 10, 2021) (allowing individual-capacity claim to proceed against jail administrator who denied prisoner's request for eye exam, where prisoner alleged his old eyeglasses caused migraine headaches and jail administrator, who was on notice prisoner was legally blind, enjoyed seeing him suffer). *But see, e.g., Wagner v. City of Saint Louis Dep't of Pub. Safety*, No. 4:12CV01901 AGF, 2014 WL 3529678, at *8 (E.D. Mo. July 16, 2014) ("Courts in this District and others have concluded as a matter of law that the denial of eyeglasses and eye medication or headaches and blurry vision resulting from an incorrect eyeglass prescription are insufficient to establish an objectively serious medical need.") (collecting cases).

"In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Vaughn v. Gray,* 557 F.3d 904, 908 (8th Cir. 2009) (internal quotation omitted). "It is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). Supervisors can incur liability "for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or

tacit authorization of violative practices," *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)).

Plaintiff does not specifically plead that any Defendant had actual knowledge of his serious medical need, but instead alleges:

> 25. Overcrowding has long been a sysemic issue whithin NDCS for over a decades period of time now, A fact well known by ALL DEFENDANTS.

> 26. This accumulative error of a systemic staff shortage and lack of medical personal has proved to be problematic and interfearing with oporations as well as helth care of inmate for ample amount of time for Defendants to act.

(Filing 7, ¶¶ 25, 26 (unedited).) Plaintiff asserts three separate "claims for relief" based on the alleged prison overcrowding and staff shortages within NDCS:

### A. Malpractice

27. All 3 Defendants faild to carry out there administrative responsibilities, to make adequate medical care available by updating polices in medical care to contend with the ongoing overwhelming rise in inmate population.

(i) Governor Pete Ricketts could have called upon the goverment requesting aid by delaring a state of emergency being a overwheling volume of inmates medical and opporational need can not be met.

(ii) Dierecter of opporation Scott Fanks could have updated polices and requested upon ther Governor of Nebraska to delacer a state of emergency in event he could not meet the necessary raito of inmate per staff or inmate per medical personal to satisfy a reasonable standard of health care.

(iii) Director of Medical Dr. Harbans Deol could have allowd for outside medical care and petitioned up the chain of comand his inability to meet or contend with the growing medical needs of the population.

28. All 3 Defendants failure to act caused unnessacry prolonged suffering and a delay and ultimate denile of need medical treatment, is

a violation of plaintiffs eighth Amendment right to be free of deliberate indifferance to mecical needs.

## B. Deliberate Indifference to Medical

29. Defendants Scott Franks, Harbans Deol and Pete Ricketts failur to maintain staff and medical personel to deal with the medical needs of prisoners in a timly manner.

30. Cause unnecessary prolonged infliction of pain and suffering upon plaintiff, for a extended period of time over (3 years) four in all still in counting.

31. As several courts have put it "systemic deficiennies in staffing, facilites or procedures [which] make unnecesary suffering inevitable may support a finding of Deliberate Indfferance.

32. Defendents denial and ongoing delay of access to eye care has caused unnecessary suffering due to lack of action on there part.

33. Defendents ineffective managment of there administrative and official capacity is clearly evidant, and constitutes a eighth Amendment violation.

34. High level officials such as the Defendents are ultimatly liable being charged with the task of overseeing, medical policies, personal, and staffing.

## C. Overcrowding

35. Overpoulation in no way absalves Defendents of the obligation to adequate organization and control on a administrative level. This failure is without a doubt unconstitutional.

36. The systemic lack of staffing and proceduial deficiencies eqat to 8th Amendment violation of plaintiffs rights by deffendents under color of law.

(Filing 7, ¶¶ 27-36 (unedited).)

To the extent Plaintiff contends Defendants have been guilty of "malpractice" or were otherwise negligent in failing to provide adequate medical care to NDCS

inmates, he has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("Deliberate indifference may be demonstrated by prison guards [or officials] who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.") (citations omitted). Nor could this court entertain such a claim under its supplemental jurisdiction. Although the Nebraska Legislature has waived sovereign immunity for certain kinds of torts against the State of Nebraska and its agencies, this waiver does not extend to actions maintained in federal court. The State Tort Claims Act ("STCA") grants exclusive jurisdiction over those claims to "the district court of the county in which the act or omission complained of occurred...." Neb. Rev. Stat. § 81-8,214. Consequently, any waiver of the state's sovereign immunity in the STCA "does not extend to actions brought in federal court." *Montin v. Moore*, 846 F.3d 289, 293 (8th Cir. 2017).

Plaintiff's "overcrowding" claim (paragraphs 35 and 36) does not contain any factual allegations[8] and does not qualify as a separate claim for relief. Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 at 679. The court therefor construes the Amended Complaint as asserting a single claim for failure to provide adequate medical care. As pleaded, however, this claim "is systemic in nature as opposed to an assertion that defendants have failed to respond to a particular risk to a particular plaintiff." *Jensen v. Gunter*, 807 F. Supp. 1463, 1482 (D. Neb. 1992) (analyzing Eighth Amendment claim that double celling at prison created a pervasive risk of harm).

In *Cullor v. Baldwin*, 830 F.3d 830 (8th Cir. 2016), the Eighth Circuit considered inadequate staffing as a basis for a § 1983 claim. There, the inmate was unable to obtain dentures from October 2010 until November 2012, despite being placed on the waiting list for dentures. The inmate claimed that the director and medical director of the department of corrections were deliberately indifferent to his objectively serious medical need by failing to address a shortage of dentists in the prison, thereby subjecting the inmate to needless pain. The Eighth Circuit affirmed

---

[8] Paragraphs 31, 33, and 34 of the Amended Complaint, as set out above, are also legal conclusions rather than factual allegations.

the district court's dismissal of the action on summary judgment because there was no showing that the defendants deliberately caused the dental staff shortage. Rather, the evidence showed that governmental and economic factors played the greatest role in the shortage. *Id.* at 839. *See also Perry v. WellPath*, No. 5:19-CV-259-BSM-BD, 2019 WL 7596184, at *2 (E.D. Ark. Oct. 3, 2019) (recommending dismissal of prisoner's deliberate-indifference claim which failed to allege that prison officials were responsible for a shortage of dental staff), *report and recommendation adopted*, 2020 WL 255436 (E.D. Ark. Jan. 15, 2020). Similarly, it was held in *Klinger v. Nebraska Dep't of Corr. Servs.*, 824 F. Supp. 1374 (D. Neb. 1993), *rev'd on other grounds*, 31 F.3d 727 (8th Cir. 1994), that "systemic inadequacies in the medical and dental care provided inmates at NCW [Nebraska Center for Women] generally" failed to establish an Eighth Amendment violation because "both the failure to provide around-the-clock medical care and the failure to provide sufficient dental personnel were founded upon considerations having to do with costs and the allocation of resources" and there was "no convincing evidence that the defendants objectively or subjectively 'intended' to 'punish' the NCW inmates by any action they took or failed to take." *Id.* at 1439-40. In other words, "the defendants lacked the 'requisite culpable state of mind,' which is necessary to prove that any of the defendants were deliberately indifferent to the serious medical or dental needs of the NCW inmates." *Id.* at 1440 (citation omitted).

In the present case, Plaintiff does not allege that the NDCS Director, NDCS Medical Director, or Nebraska Governor had actual knowledge that eyecare for inmates was inadequate because of understaffing (as opposed to knowing in general that prisons are overcrowded), or that any of them acted or failed to act with the requisite state of mind. At best, Plaintiff has alleged Defendants were negligent in failing to correct a problem of which they should have been aware. But, as already discussed, negligence is not sufficient to establish an Eighth Amendment violation.

Although Plaintiff does not specifically plead that any Defendant had actual knowledge of his serious medical need, copies of grievance forms attached to the Amended Complaint indicate Defendant Deol was informed that Plaintiff had not had an eye exam for four years, despite repeated requests, and was complaining of constant pain from going without prescription eyeglasses. (See Filing 7, pp. 3-6.) Defendant Deol, acting as the "[NDCS] Director's Designee," signed the "Step

Two" grievance form telling Plaintiff: "The Eye doctor comes to LCC/DEC once every 4-6 weeks. You are on the waiting list to be seen and will need to wait your turn." (Filing 7, p. 6.)

In *Madewell v. Roberts*, 909 F.2d 1203 (8th Cir. 1990), the Court of Appeals held that a prison warden and the director of the state agency in charge of the prison were not entitled to summary judgment on a prisoner's Eighth Amendment claim because they "had personal knowledge of [the conditions alleged to amount to cruel and unusual punishment for the plaintiff] through their review of the relevant grievances." *Id.*, at 1208. Liberally construing the Amended Complaint, Plaintiff has sufficiently alleged that Defendant Deol had actual knowledge of Plaintiff's serious medical need and deliberately disregarded that need by telling Plaintiff he had to wait his turn on the LCC appointment list, without regard to the extensive delay in treatment he had already experienced at TSCI. Thus, even though Plaintiff has failed to state a claim upon which relief may be granted based on a "systemic" lack of adequate medical care at NDCS, he has stated a viable Eighth Amendment claim regarding his particularized need for eyeglasses.

In his original Complaint, NDCS was the only named Defendant. As a state agency, however, NDCS is a not a "person" within the meaning of 42 U.S.C. § 1983, and, under the Eleventh Amendment, is immune from suit in federal court for monetary, declaratory, and injunctive relief. *Yanga v. Nebraska Dep't of Corr. Servs.*, No. 8:19CV420, 2021 WL 520530, at *3 (D. Neb. Feb. 11, 2021). Plaintiff has corrected this pleading deficiency in the Amended Complaint insofar as he now seeks prospective injunctive relief against three state officials sued in their official capacities. State officials sued in their official capacities for prospective injunctive relief are "persons" under § 1983, because such actions are not treated as actions against the state. See *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Under the doctrine of *Ex parte Young*, a state's Eleventh Amendment immunity does not bar a suit against state officials when the plaintiff seeks only prospective relief for ongoing violations of federal rights. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002); *Ex parte Young*, 209 U.S. 123 (1908).

However, insofar as Plaintiff seeks a declaration that his Eighth Amendment rights were violated by Defendants in their official capacities (see Filing 7, pp. 9-10,

¶¶ 37A-C), such relief is not available here. "A declaratory judgment establishing only the *past liability* of the state is forbidden by the state's sovereign immunity preserved by the Eleventh Amendment to the Constitution." *Hansen v. Vampola*, No. 4:07CV3074, 2007 WL 1362689, at *2 (D. Neb. Apr. 16, 2007) (emphasis in original) (citing *Verizon,* 535 U.S. at 646); *see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex Parte Young* exception to Eleventh Amendment immunity "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past"). An official-capacity claim for monetary damages would, of course, also be barred by Eleventh Amendment immunity.

The proper state defendant in a § 1983 action seeking prospective injunctive relief is the person who "would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims." *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (prison warden was proper defendant for a claim of injunctive relief, notwithstanding his lack of personal involvement in the challenged conduct, because he would be responsible for ensuring that the injunctive relief was carried out)). *See, e.g.*, *Billings v. N. Dakota State Penitentiary*, No. 1:07-CV-066, 2007 WL 4380056, at *3 (D. N.D. Oct. 26, 2007) ("If [the plaintiff] wants injunctive relief, he must name a state official who would be authorized under state law to provide the relief requested, which may very well be a person different from those who may be liable for any damages."), *report and recommendation adopted*, No. 1:07-CV-066, 2008 WL 243958 (D. N.D. Jan. 28, 2008).

Although Plaintiff is suing three Defendants in their official capacities for prospective injunctive relief, "is not necessary to name more than one defendant who could respond to any court order that might ensue as a result of this action." *Belton v. Newsom,* No. EDCV1901179PADFM, 2020 WL 2089483, at *3 (C.D. Cal. Feb. 14, 2020) (recommending that § 1983 official-capacity claims regarding prisoner's conditions of confinement be dismissed as to all defendants except the warden), *report and recommendation adopted*, 2020 WL 1433708 (C.D. Cal. Mar. 23, 2020). In this instance, Medical Director Deol would be an appropriate official to direct that Plaintiff receives necessary eyecare, if the court were to so order. In fact, Plaintiff

specifically requests the court to issue an injunction "requiring Defendant Deol [to] provide timely and reasonable medical care." (Filing 7, p. 10, ¶ 37D.) The official-capacity claim against Defendant Deol therefore will be allowed to proceed.

Beyond overseeing Plaintiff's immediate need for medical treatment, the court is also asked to require all Defendants to provide inmates with medical care equivalent to what would be available to them on the outside, or to give them access to outside care, and to attain an adequate staff-to-inmate ratio for medical and other prison staff within a prescribed time. (See Filing 7, p. 10, ¶¶ 37E-G.) Such injunctive relief is not necessary to correct the alleged deliberate indifference to Plaintiff's serious medical need for prescription eyeglasses, and is not permitted under Section 3626 of the Prison Litigation Reform Act, which provides in part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1) (Westlaw 2022). Consequently, there is no need to include Director Frakes or Governor Ricketts as defendants in their official capacities.

The individual-capacity claims against Director Frakes and Governor Ricketts will also be dismissed because neither of them is alleged to have had any knowledge concerning Plaintiff's need for medical treatment. *Cf. Williams v. York*, 891 F.3d 701, 707 (8th Cir. 2018) (distinguishing claim in *Cullor*, where prison officials allegedly were "deliberately indifferent to [the plaintiff's] serious dental needs by failing to adequately staff the prison's dental unit despite their general knowledge of resulting delays in inmate dental care," from claim premised on allegations that each defendant was personally aware of the plaintiff's severely painful dental condition but took no action to get him treatment). *See, e.g., Perry*, 2020 WL 763258, at *2 (prison officials "general knowledge" of delays in inmates' dental care is insufficient

to show they were specifically aware of plaintiff's serious dental needs yet deliberately disregarded his needs).

The individual-capacity claim against Defendant Deol will be allowed to proceed, however. *See, e.g., Langford v. Norris*, 614 F.3d 445, 460-61 (8th Cir. 2010) (holding that if director of department of corrections knew plaintiffs' serious medical needs were not being adequately treated yet remained indifferent, he could be held personally liable). Although Plaintiff does not request an award of damages, the prayer for relief is not considered part of the claim for purposes of testing the sufficiency of the pleading under Rule 8(a)(2). *Schwan v. CNH Am. LLC*, No. 4:04CV3384, 2006 WL 1215395, at *35 (D. Neb. May 4, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1255, at 508-09 (3d ed. 2004)). Plaintiff's allegation that Defendant Deol is sued in his official and individual capacities (see Filing 7, ¶ 11) provides sufficient notice that he may be held personally liable. *See Johnson v. Outboard Marine Corp*., 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity. Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants.") (citations omitted).

"When allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility." *McKenna v. Wright*, 386 F.3d 432, 438 (2d Cir. 2004). *See also Butler v. Corizon Health, Inc.,* No. 4:16-CV-00590-AGF, 2017 WL 2935662, at *6 (E.D. Mo. July 10, 2017) ("A prison official cannot insulate himself from liability merely by … deferring to his role in the official grievance procedure when the official had actual knowledge of the prisoners' complaints."); *Reece v. Missouri Dep't of Corr*., No. 406CV00833 AGF, 2006 WL 2883287, at *1 (E.D. Mo. Oct. 6, 2006) (denying prison medical director's motion to dismiss where he had responded to plaintiff's grievance appeal regarding request for dentures).

13

## IV. CONCLUSION

Plaintiff's Amended Complaint sufficiently states a claim for relief upon which relief may be granted against Defendant Harbans Deol, in his official and individual capacities, for deliberate indifference to Plaintiff's objectively serious medical need for prescription eyeglasses. All other claims, including all claims against NDCS Director Frakes and Governor Ricketts, will be dismissed without prejudice.

IT IS THEREFORE ORDERED:

1.  This case shall proceed to service of process on Plaintiff's § 1983 claim against Defendant Harbans Deol, in his official and individual capacities, for deliberate indifference to Plaintiff's objectively serious medical need for prescription eyeglasses.

2.  All other claims are dismissed dismissed without prejudice, and Defendants Scott Franks (Frakes) and Governor Pete Rickets (Ricketts) shall no longer be parties to this action.

3.  For service of process of process on Defendant Harbans Deol, in his official and individual capacities, the clerk of the court is directed to complete two sets of summons and USM-285 forms. The service address for the first set of forms is:

    Office of the Nebraska Attorney General
    2115 State Capitol
    Lincoln, NE 68509

    The service address for the second set of forms is:

    Nebraska Department of Correctional Services
    P. O. Box 94461
    Lincoln, NE 68509-4661

14

4.    The clerk of the court shall forward the summons forms and USM-285 forms together with two copies each of Plaintiff's Amended Complaint (Filing 7) and this Memorandum and Order to the Marshals Service.[9]

5.    The Marshals Service shall serve Defendant Deol in his official and individual capacities by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General." Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency).[10] *See also* Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf, regardless of whether the employee is also sued in an official

---

[9] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

[10] *See* Fed. R. Civ. P. 4(j)(2) ("A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.").

15

capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

6.    The Marshals Service shall also serve Defendant Deol by certified mail or other authorized method of service at the Nebraska Department of Correctional Services' address shown above. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

7.    The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

8.    Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

9.    The clerk of the court is directed to set the following pro se case management deadline: "July 21, 2022: check for service."

10.   Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 22nd day of April 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

16